CLAUS MATTHEIS V. FREMONT, ELKHORN AND MISSOURI VALLEY RAILROAD COMPANY.

FILED FEBRUARY 2, 1898.   No. 7760.

1. **Eminent Domain:** CONDEMNATION PROCEEDINGS: TRIBUNAL. The proceeding for condemning real estate for right of way of a railway company provided for by section 97, chapter 16, Compiled Statutes, is not instituted in nor conducted by the county court.

2. ———: ———: ———. Such a proceeding is conducted by the county judge, the sheriff, and the appraisers selected by the former. These constitute a tribunal not to try a civil action pending between the land-owner and the railway company, not to pronounce a judgment, but simply to assess the damages which the land-owner will sustain by reason of the appropriation of his land for the railroad's right of way.

3. ———: ———: ———. The powers conferred upon the county judge and the duties required of him by that act are not judicial powers and duties but purely ministerial ones.

4. ———: ———: VACATING AWARD. The county court has no jurisd'ction of an action brought under section 602 of the Code of Civil Procedure to vacate such a condemnation proceeding on the ground that the award of damages made therein was procured by fraud.

5. ———: ———: ———: COUNTY COURT. The county court has no jurisdiction of a suit in equity to vacate such a condemnation proceeding.

6. ———: ———: ———: ———. Whether a county judge has jurisdiction to set aside an award of damages made in such a condemnation proceeding for any cause or at any time not decided.

7. ———: ———: ———: ———. But, if the county judge has such jurisdiction, an application to him to set aside an award of damages made in such a proceeding under such statute, solely on the grounds that the damages were inadequate, and the award procured by fraud of the railroad company, should not be entertained when the application was made more than five years after the condemnation proceeding occurred, the condemnation money awarded the applicant had all that time been in the hands of the county judge for the applicant's use, the railroad company had built and was operating its road on the easement condemned; the application not averring that the applicant had no legal notice of such condemnation proceeding whether he appealed or attempted to appeal from the award made, nor that he was deprived of his appeal by fraud, accident, or some circumstance beyond his control.

ERROR from the district court of Douglas county. Tried below before DUFFIE, J.  *Affirmed.*

*Warren Switzler,* for plaintiff in error.

*William B. Sterling, Benjamin T. White,* and *James B. Sheean, contra.*

RAGAN, C.

In June, 1887, the county judge of Douglas county, at the request of the Fremont, Elkhorn & Missouri Valley Railroad Company, hereinafter called the railroad company, which desired to obtain a right of way across the land of Claus Mattheis, selected six disinterested freeholders of said county, caused them to be summoned by the sheriff thereof, and they made an assessment of the amount of damages which Mattheis would sustain by reason of the appropriation of a part of his land for right of way by the railroad company and duly reported their assessment to such county judge, who certified the same under his seal of office and transmitted it to the county clerk of said county for record. In October, 1894, Mattheis filed against said railroad company in the county court of Douglas county a petition praying the county court to set aside and vacate the condemnation proceeding upon the ground that the assessment of damages made by the appraisers in such proceeding was procured by the fraud of the railroad company. The county court sustained a general demurrer to this petition and dismissed the same, and Mattheis prosecuted a petition in error from that judgment to the district court of said county, which affirmed the judgment of the county court, and Mattheis has brought here for review on error the judgment of the district court.

1. As we understand from his argument counsel for the plaintiff in error insists that this action can be maintained upon one of three theories. The first theory is that the condemnation proceeding was had in the county

court and was a judicial proceeding; and that the con-
demnation proceeding which resulted in awarding dam-
ages to the plaintiff in error was a judgment or an order
made by the county court; and under sections 602, 603,
and 610 of the Code of Civil Procedure they are entitled
to have that court set such condemnation proceeding
aside, because procured by fraud of the railroad com-
pany.   But was this condemnation proceeding had in the
county court, and was the proceeding in any sense, a judi-
cial one?   Section 97, chapter 16, Compiled Statutes,
provides that if a railroad company desires to locate its
road across certain real estate, and the owner thereof
refuses to grant the right of way, then, upon application
of either the railroad company or the land-owner, the
county judge shall select six disinterested freeholders
and direct them to be summoned by the sheriff of the
county; that these freeholders so selected shall inspect
and view the real estate sought to be appropriated for
the right of way by the railroad and assess the damages
which the land owner will sustain by reason of the ap-
propriation of his land for such right of way, and make
a report of their assessment in writing to the county
judge of said county; that he shall, after certifying such
report under his seal of office, transmit the same to the
county clerk of said county for record; that the clerk
shall file and record said report, and it shall thereafter
have the force and effect of a deed from the land owner
to the railroad company for the easement appropriated.
The section also provides that either party may have the
right to appeal from the assessment of damages made by
the freeholders to the district court of the county in
which the lands are situate within sixty days after the
date of the assessment, and in case such an appeal be
taken, the finding and decision of the district court shall
be transmitted by the clerk thereof, duly certified, to the
county clerk, to be there filed and recorded.   Section 97
of the chapter provides that in case of the default, ab-
sence, refusal, or neglect of any freeholder to act as a

commissioner or appraiser the sheriff shall, upon the selection of the county judge, summon other freeholders to complete the panel. It is to be observed that the county court has nothing whatever to do with this proceeding. It is not a proceeding instituted in the county court. The appraisers are not selected by the county court. The summons is not returnable to the county court, and with the report of the appraisers the county court has no concern whatever; and the statute does not even require that a report of the proceedings of the appraisers shall be kept in the county court. The entire proceeding is conducted by the county judge, the sheriff, and the appraisers selected by the former. These constitute a tribunal not to try a civil action pending between the land owner and a railroad company, not to pronounce a judgment, but simply to inquire and report to the county judge what damages the land owner will sustain by reason of the appropriation of his land for the railroad's right of way. The power conferred by the act upon the county judge and the duty required of him by that act are not judicial powers or duties, but purely ministerial powers and duties. (*Illinois C. R. Co. v. Rucker*, 14 Ill. 353; *Chicago, B. & Q. R. Co. v. Wilson*, 17 Ill. 123; *People v. McRoberts*, 62 Ill. 38, which were mandamus cases, one to compel the county judge to appoint the appraisers to assess the damages of the land owner which the railroad company desired for right of way, and the other two mandamus proceedings to compel circuit judges to appoint such appraisers.) Looking at the action in the case at bar as one brought under section 602 of the Code of Civil Procedure in the county court of Douglas county, invoking its powers to vacate and modify one of its own judgments or orders made by it because obtained by fraud, it cannot be maintained, for the simple reason that the condemnation proceeding which the action seeks to have the county court vacate and set aside did not occur in the county court; and if the result of the condemnation proceeding can in any sense be regarded as a judgment

or an order made, then the county court did not render such judgment or make such order.

2. A second theory upon which counsel for plaintiff in error seeks to maintain this action is that the county court is invested with equitable jurisdiction, and that this action is brought to that court, invoking its equity powers to set aside the condemnation proceeding because procured by fraud; but this theory, like the other, assumes that the condemnation proceeding occurred in the county court. It may be conceded that the county court, as a court of record, is invested with equitable powers and jurisdiction in any case before it when by the constitution or the laws of the state that court is invested with jurisdiction of the subject-matter out of which the case or proceeding in hand grows. But neither the constitution, nor any statute of this state, invests the county courts with general equitable jurisdiction; and if this condemnation proceeding was procured by fraud practiced upon the county judge and the appraisers, the county court is not invested with any equitable jurisdiction to vacate it. If in a suit brought before the county judge sitting as a justice of the peace one party by fraud should obtain a judgment, it certainly would not be contended that the county court was possessed with equitable jurisdiction to set that judgment aside. The county court, then, had no jurisdiction or authority to grant the relief prayed for in this action, viewing it as purely an equitable action invoking the equity powers of the county court.

3. We do not determine whether the county judge, because of the power conferred upon him and the duties required of him by the statute in the condemnation of real estate for railway purposes, is invested with the authority to set aside for any reason at any time an appraisement made in such a proceeding. Certainly the statute in express terms invests him with no such power; but assuming for the purposes of this case that the county judge has jurisdiction to set aside an appraise-

ment made because procured by fraud and that the proceeding at bar is an application addressed to him invoking his exercise of such power, we are of opinion that the application was by him properly denied. The reaord discloses that the plaintiff in error in this case had personal notice of the condemnation proceeding. For aught the record discloses he was present when the appraisement was returned, and the only injury which he claims to have sustained by the alleged fraud of the appraisers is that the damages awarded him were inadequate. The record does not disclose that he appealed from the award made, nor that he made any attempt to appeal, nor that he was prevented from appealing by any fraud, accident, casualty, or circumstance beyond his control—in other words, the application does not aver facts which show that the plight of the plaintiff in error is not the result of his own laches; and, conceding the authority of the county judge in the premises, we also think that this application was made too late. The record discloses that the railway company paid to the county judge for the use of the plaintiff in error the amount of damages awarded; that this money is still in the hands of the county judge. The railway company took possession of its right of way, constructed its road thereon, and has been operating the same over such right of way for years before this application was made. In any view, then, which we are able to take of this case the judgment of the district court is right and is

AFFIRMED.

NORVAL, J.

I concur in the judgment just entered on the sole ground that the county court had no jurisdiction of the subject-matter of the action.