228 F.2d 647
 VILLAGE OF WALTHILL, NEBRASKA, a Municipal Corporation, Appellant,
v.
IOWA ELECTRIC LIGHT AND POWER COMPANY, a Corporation; and First National Bank of Chicago (Trustee), a Corporation, Appellees.
 No. 15400.
 United States Court of Appeals Eighth Circuit.
 January 13, 1956.
 Rehearing Denied February 16, 1956.
 
 W. W. Nuernberger, Lincoln (Ernest B. Perry, Arthur E. Perry, and R. R. Perry, Lincoln, Neb., were with him on the brief), for appellant.
 Lawrence J. Tierney, Omaha, Neb. (Ralph E. Svoboda, R. A. Skochdopole, and Kennedy, Holland, Delacy & Svoboda, Omaha, Neb., were with him on the brief), for appellees.
 Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 This action involves a condemnation proceeding whereby the Village of Walthill in Nebraska, appellant, is seeking to condemn a gas distribution system located in said Village and owned by appellees, Iowa Electric Light and Power Company and First National Bank of Chicago (Trustee). Upon appellees' petition this case was removed to the Federal Court. A motion to remand upon the ground that the Federal Court was without jurisdiction for the reason that the cause of action had not reached the maturity of a civil action was overruled. The Federal District Court upheld its jurisdiction, fixed the value of the distribution system, and entered final judgment of dismissal of the action upon the basis that "the aforesaid gas distribution system is not a gas plant, within the purview of the Nebraska Statutes authorizing condemnation by the Plaintiff municipality and condemnation thereof by the Plaintiff is, hence, precluded." The District Court's memorandum opinion is published in 125 F. Supp. 859.
 
 
 2
 Appellant seeks reversal of the final judgment of the District Court on the following grounds:
 
 
 3
 1. The court erred in finding that the condemnation proceeding was a civil action subject to removal.
 
 
 4
 2. The court erred in its conclusion of law that the Village of Walthill, Nebraska, had no power to condemn the gas distribution system of the appellees under the Nebraska Statutes.
 
 
 5
 A third ground to the effect that the court committed error in fixing the valuation of appellees' property was withdrawn on oral argument.
 
 
 6
 The issue of whether the condemnation proceeding had reached the status of a civil suit subject to removal is thoroughly argued by all parties. Diversity of citizenship and the jurisdictional amount are both present. The parties agree that a State condemnation case if carried on through appeals would become removable at some stage. They disagree violently on whether that stage had been reached. The controlling issue is whether the proceeding here involved was a civil action at the time it was transferred to the Federal Court. If it was a civil action, the transfer was proper under 28 U.S.C. § 1441. A consideration of the facts is necessary to properly discuss this issue.
 
 
 7
 The appellant Village, pursuant to section 19-701, R.R.S.Nebraska 1943, at an election obtained authorization from its voters to acquire the gas plant[1] of the appellees. The appellant certified and transmitted the results of the election to the Supreme Court of Nebraska which in turn appointed a court of condemnation consisting of three district court judges as prescribed by section 19-702, R.R.S.Nebraska 1943.[2] The powers, duties, and procedure of the condemnation court are prescribed by sections 19-703, 19-704, and 19-705.[3]
 
 
 8
 The filing of the certified record of the election with the Supreme Court and the appointment by the Supreme Court of the condemnation court did not constitute the commencement of a civil action. The Nebraska court has held that the appointment of the members of the court of condemnation is a ministerial act only and does not lodge the condemnation proceeding in the Supreme Court or amount to such an institution of a proceeding as to give the Supreme Court any jurisdiction of the condemnation proceeding. In re Application of City of Sidney (Consumers Public Power District v. City of Sidney Power Dist.), 144 Neb. 6, 12 N.W.2d 104.
 
 
 9
 The Village filed a petition with the three-judge condemnation court and summons was served upon the appellees. Appellees responded to the summons by filing petition for removal to the Federal District Court. The transfer took place before the condemnation court heard any evidence or made any finding as to the valuation of the property sought to be condemned. Appellees insist and the trial court found that at this stage the proceeding was a civil action and hence subject to removal. All parties rely upon In re Appraisement of Omaha Gas Plant (Updike v. City of Omaha), 102 Neb. 782, 169 N.W. 725. In that case the constitutionality of the condemnation statutes involved in our present case was upheld, the court holding that the court of condemnation is not a court, and that under the Nebraska Constitution the legislature would have no right to create such a court. As we read the Omaha Gas Plant case, the court treated the three-judge condemnation court as a board of appraisers, the court stating 169 N.W. at pages 726-727:
 
 
 10
 "While the proceedings are judicial in their nature, it is unnecessary that they be conducted in their inception by a court, and in fact in every instance in which condemnation proceedings are carried on in this state, so far as to the writer known, they are not conducted in or by any regular judicial tribunal. While the appraisers required to be appointed by the statute under consideration are called a court of condemnation, the fact that this term is used is immaterial. Such bodies have been variously termed boards of assessment, of commissioners, of appraisers; but, whatever the nomenclature, they exercise practically the same functions, sometimes with, and sometimes without, the assistance of officers of regularly constituted courts.
 
 
 11
 * * * * *
 
 
 12
 "* * * As we have seen, the act of appraising the value of property involves the exercise of judicial functions — facts must be collated and compared in the mind of the appraiser, a standard of value must be reached, and the property measured by that standard. It is competent for the Legislature to select a class from which appraisers may be chosen, and men of judicial training and experience are no doubt well qualified for such duties."
 
 
 13
 There are statements in the Omaha Gas Plant case, supra, and in In re Application of City of Sidney, supra, to the effect that the proceedings of the court of condemnation are judicial in nature. The same thing has been said by the Nebraska court about the functions of lay appraisers appointed under other condemnation statutes. Webber v. City of Scottsbluff, 155 Neb. 48, 50 N.W.2d 533; Albin v. Consolidated School District, 106 Neb. 719, 184 N.W. 141. In the quotation from the Omaha Gas Plant case appearing above, it is apparent that the court, in speaking of appraisers performing judicial functions, was referring to appraisers generally. We do not believe that the fact that the appraisal board exercises some judicial functions raises the proceedings in which it is acting to the level of a civil action. Under the statutes we are here considering, the three-judge condemnation court's authority is limited to fixing the value of the property. Section 19-703, R.R.S.Nebraska 1943, provides in part:
 
 
 14
 "Such court shall have all the powers and perform all the duties of commissioners in the condemnation and ascertainment of the value and in making of an award of all property of any such works, plant or system."
 
 
 15
 The job assigned to the three-judge condemnation court is the same as that assigned to appraisers generally. It has no jurisdiction to determine issues other than those relating to value. Here the appellees have asserted many defenses to the condemnation, among them, that the proceedings were not within the purview of the statute, that the authorizing election was void, that there was no statutory authority to condemn a distribution system, and that the appellant is estopped. The applicable statutes do not give the condemnation court jurisdiction to determine such issues, and no one contends that the condemnation court is authorized to make such determinations. In a civil action a defendant has the right to assert all his defenses. Rule 12, Federal Rules of Civil Procedure, 28 U.S.C. This the appellees could not do in the condemnation court.
 
 
 16
 In Chicago, R. I. & P. R. Co. v. Stude, 8 Cir., 204 F.2d 116, rehearing denied, 8 Cir., 204 F.2d 954, affirmed 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317, the railroad had instituted condemnation proceedings pursuant to Iowa statutes, and valuation had been fixed by a commission appointed by the sheriff. Appeal was taken to the appropriate State District Court, and upon petition of the railroad the proceeding was removed to the Federal Court. The railroad also filed an original complaint in the Federal District Court alleging diversity jurisdiction, setting out the State proceedings, and contending that the damages fixed by the commissioners were excessive. Motion was made in the Federal District Court to dismiss the original complaint and remand the appeal proceedings from the commissioners' valuation. The original complaint was dismissed. This court also held that remand of the appeal proceedings should be made to the State court. This holding which was affirmed by the Supreme Court of the United States was based principally upon a finding that the railroad was not a defendant within the meaning of the Federal removal statute. The general principles applicable to removal are discussed, this court stating, 204 F.2d at page 119:
 
 
 17
 "There can be no doubt that when the requisite diversity of citizenship and the amount involved exist, proceedings for the acquisition of private property by eminent domain under state law may be removed from a state court to a federal court. But that right of removal exists only when the proceedings have ripened into a civil action in a state court. In [Mississippi & Rum River] Boom Co. v. Patterson, 8 Otto 403, 98 U.S. 403, 406, 25 L. Ed. 206, the Supreme Court said:
 
 
 18
 "`The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of those terms. But when it was transferred to the District Court by appeal from the award of the commissioners, it took, under the statute of the State, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents.'"
 
 
 19
 This court held that condemnation proceedings under the Iowa Code would not become civil actions until appeals were lodged in the State District Court, and quotes with approval from Myers v. Chicago & N. W. Ry. Co., 118 Iowa 312, 91 N.W. 1076, as follows, 204 F.2d at page 120: "`Unless in court, or before those exercising judicial functions, the proceeding cannot be regarded as a suit. (Citing cases.) That the proceeding to condemn land is not a suit, within the language of the removal acts of congress, and is such after the appeal to the district court, seems to be conclusively settled against the appellees in [Mississippi & Rum River] Boom Co. v. Patterson (8 Otto 403), 98 U.S. 403, 25 L. Ed. 207, and (Union Pacific) Railroad Co. v. Myers, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319. See, also, Searl v. School Dist., 124 U.S. 197, 8 S.Ct. 460, 31 L.Ed. 415.'"
 
 
 20
 In affirming Chicago, R. I. & P. R. Co. v. Stude, the Supreme Court stated 346 U.S. at pages 578-579, 74 S.Ct. at page 294:
 
 
 21
 "The proceeding before the sheriff is administrative until the appeal has been taken to the district court of the county. Then the proceeding becomes a civil action pending before `those exercising judicial functions' for the purpose of reviewing the question of damages. Myers v. Chicago & N. W. Ry. Co., 118 Iowa 312, 315-316, 91 N.W. 1076, 1078. When the proceeding has reached the stage of a perfected appeal and the jurisdiction of the state district court is invoked, it then becomes in its nature a civil action and subject to removal by the defendant to the United States District Court. Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 407, 25 L.Ed. 206."
 
 
 22
 In Des Moines Water Co. v. City of Des Moines, 8 Cir., 206 F. 657, under Iowa statutes[4] providing for appointment of three-judge condemnation courts, which statutes in many respects are similar to the Nebraska statutes here involved, this court held that a petition for removal filed immediately after the organization of a three-judge condemnation court was premature, stating at page 662:
 
 
 23
 "* * * Although this body is called a court, the members thereof can be no more considered a judicial tribunal than can the six freeholders selected by the sheriff to perform similar duties. * * *
 
 
 24
 "At the time the petition for removal was filed the proceeding was not then a `suit,' within the meaning of the removal acts * * *."
 
 
 25
 The Iowa statutes like the Nebraska statutes provide for appointment by the Supreme Court of a court of condemnation consisting of three district judges. Under both statutes the condemnation court is authorized to summon and swear witnesses, require the production of books and papers, take evidence, appoint a court reporter, and have the benefit of the services of the clerk of the district court and the sheriff of the county in which it is sitting, and is authorized to perform all duties of commissioners in the condemnation of property. The function of the condemnation court in each instance is to fix the value of the property sought to be condemned. There is some difference as to appeals. Under Iowa law either party may appeal to the district court. Under § 19-704, R.R.S.Nebraska 1943, the Village has the right, within ninety days after the award, to elect by ordinance to abandon the proceedings. If it does not so elect, the owner may appeal to the district court, in which event, the appeal shall be determined upon the pleadings, proceedings, and evidence embraced in the transcript of the record made in the condemnation court.
 
 
 26
 We have found no Nebraska cases treating with the problem of how appeals from three-judge condemnation courts are to be handled. Obviously, since the condemnation court determines only questions of value, the court would not receive and consider evidence on issues other than value and the transcript would contain no record of such evidence. In Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N.W.2d 333, another Nebraska condemnation statute which provided for the filing of the petition with the county court with the valuation to be made by appraisers appointed by such court is considered. The court states, 64 N.W.2d at pages 336-337:
 
 
 27
 "It is a fundamental rule in this state that if new issues other than the assessment of damages are to be raised on appeal in a condemnation proceeding, they must be pleaded. On appeal the proceeding is judicial as distinguished from the administrative proceeding before the county judge. A condemnee is required to raise any and all issues in the district court and, if he does not, he is bound by the rule of res judicata in a collateral attack.
 
 
 28
 * * * * * *
 
 
 29
 "* * * The present appeal statute contemplates the filing of pleadings and the framing of issues for the first time in the judicial proceeding in the district court. The issue is not limited to the question of damages only unless the pleadings limit the trial to that issue. * * *"
 
 
 30
 See also Higgins v. Loup River Public Power District, 157 Neb. 652, 61 N.W.2d 213; Jensen v. Omaha Public Power District, 159 Neb. 277, 66 N.W.2d 591.
 
 
 31
 Rule 71A, Federal Rules of Civil Procedure, provides for the condemnation of property. 71A(k) provides:
 
 
 32
 "Condemnation Under a State's Power of Eminent Domain. The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury, or for trial of the issue of compensation by jury or commission or both, that provision shall be followed."
 
 
 33
 It would seem that upon transfer to the Federal District Court the Federal Rules of Civil Procedure would apply to State proceedings properly transferred except as limited by Rule 71A(k), preserving the right to a jury trial if it existed in the State court. Barron and Holtzoff, Federal Practice and Procedure, § 1527.
 
 
 34
 We find the facts here to be sufficiently similar to those in the Des Moines Water Co. case, supra, so far as they relate to the removal issue, to make that case controlling upon us here. From the cases hereinabove cited, it appears that in Nebraska, as well as in Iowa, the proceedings before the appraisers are not considered an action before a judicial tribunal. The three-judge condemnation court is in reality just another board of appraisers. We believe this conclusion to be somewhat further supported by the fact that section 19-704, R.R.S.Nebraska 1943, gives the municipality ninety days after determination of value to abandon the proceedings by ordinance, and the fact that an appeal is allowed the owner only in the event that the project is not abandoned. This, it seems to us, lends support to the view that the proceeding before the three-judge court is merely a valuation proceeding, and that the real controversy does not arise until after the lapse of the ninety days after the valuation allowed the municipality for abandoning the proceeding. Other cases in addition to those already cited supporting the conclusion that the status of a civil action had not been reached are Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Union Pacific R. Co. v. Myers (Pacific Railroad Removal Cases), 115 U.S. 1, 18, 5 S.Ct. 1113, 29 L.Ed. 319.
 
 
 35
 We hold that at the time of the removal the condemnation proceeding had not acquired the status of a civil action, and that consequently the court erred in overruling the appellant's motion to remand.
 
 
 36
 Because of the foregoing conclusion it is unnecessary to consider appellant's other contention.
 
 
 37
 The judgment appealed from is reversed and the case is remanded to the trial court with directions to remand it to the condemnation court.
 
 
 
 Notes:
 
 
 [1]
 The statute authorizes acquisition of gas plants. Appellees own the gas distribution system in the Village of Walthill. The gas distributed was obtained from a pipeline. One of the issues involved in this appeal is whether the term "gas plant" is broad enough to include a gas distribution system
 
 
 [2]
 "Court of condemnation; members; hearing; parties; notice. If the election at which the question is submitted is a special election and sixty per cent of the votes cast upon such proposition are in favor thereof, or if the election at which the question is submitted is a general election and a majority of the votes cast upon such proposition are in favor thereof, then the city council or village board of trustees or officer possessing the power and duty to ascertain and declare the result of such election shall certify such result immediately to the Supreme Court of the state. The Supreme Court shall within thirty days after the receipt of such certificate, appoint three district judges from three of the judicial districts of the state, and said three judges shall constitute a court of condemnation for the ascertainment and finding of the value of any such plant, works or system and the said Supreme Court shall enter an order requiring such judges to attend as a court of condemnation at the county seat in which such city or village is located within such time as may be stated in such order. Said district judges shall so attend as ordered and such court of condemnation at such time it meets shall organize and proceed with its duties. It may adjourn from time to time, and it shall fix a time for the appearance before it of all such corporations or persons as the court may deem necessary to be made parties to such condemnation proceedings or which the city, the village or corporation or persons owning any such plant, system or works may desire to have made a party to such proceedings. If such time of appearance shall occur after any proceedings have begun, they shall be reviewed by the court, as it may direct, to give all parties full opportunity to be heard. All corporations or persons, including all mortgagees, bondholders, trustees for bondholders, leaseholders, or any other party or person claiming any interest in or lien upon any such works, plant or system may be made parties to such condemnation proceedings, and shall be served with notice of such proceedings and the time and place of the meeting of the court of condemnation in the same manner and for such length of time as the service of a summons in cases begun in the district court of the state, either by personal service or service by publication, and actual personal service of notice within or without the state shall supersede the necessity of notice by publication."
 
 
 [3]
 "19-703. Court of condemnation; powers and duties; vacancy, how filled. Such court of condemnation shall have full power to summon and swear witnesses, take evidence, order the taking of depositions, and require the protection of any and all books and papers deemed necessary for a full investigation and ascertainment of the value of any such works, plant or system;Provided, that when part of the public utilities appropriated under sections 19-701 to 19-707 extends beyond the territory within which the city or village exercising the right of eminent domain has a right to operate the same, the court of condemnation, in determining the damages caused by the appropriation thereof, shall take into consideration the fact that such portion of the utility beyond such territory is being detached and not appropriated by the city or village, and the court of condemnation shall award damages by reason of such detachment and the destruction in value and usefulness of the detached and unappropriated property as it will remain and be left after the detachment and appropriation. Such court of condemnation may appoint a reporter of its proceedings who shall report and preserve all evidence introduced before it. Such court shall have all the powers and perform all the duties of commissioners in the condemnation and ascertainment of the value and in making of an award of all property of any such works, plant or system. The clerk of the district court, in the county where such city or village is located, shall attend upon said court of condemnation and perform such duties, as the clerk thereof, as such condemnation court may direct. The sheriff of any such county, or any of his deputies shall attend upon said court and shall have power to serve summons, subpoenas, and all other orders or papers ordered to be served by such condemnation court. In case of vacancy in said court of condemnation such vacancy shall be filled by the Supreme Court if the vacancy occurs while the court is in session, and if it occurs while the court is not in session, then by the Chief Justice of said court.
 "19-704. Court of condemnation; award; appeal; procedure; effect of appeal. Upon the determination and filing of a finding of the value of any such plant, works or system by the said court of condemnation, such city or village shall then have the right and power by ordinance duly passed by its duly constituted authorities, to elect to abandon such condemnation proceedings. If it does not elect within ninety days after the finding and filing of value, then the person or corporation owning any such plant, works, or system may appeal from the finding of value and award by the said court of condemnation to the district court by filing within twenty days from the expiration of the said time given the city or village to exercise its rights of abandonment, with the city clerk of any such city or the village clerk of any such village, a bond, to be approved by him, conditioned upon the payment of all costs which may be made on any such appeal, and by filing in said district court, within ninety days after such bond is filed, a transcript of the proceedings before such condemnation court including the evidence taken before it certified by the clerk, reporter, and judges of such court. The appeal in the district court shall be tried and determined upon the pleadings, proceedings, and evidence embraced in such transcript; Provided, that if such appeal is taken the city or village, upon tendering the amount of the value and award made by such condemnation court, to the party owning any such plant, works or system, shall, notwithstanding such appeal, have the right and power to take immediate possession of any such plant, works or system, and the city or village authorities, without vote of the people, shall have the power, if necessary, to issue and sell bonds of the city or village to provide funds to make such tender.
 "19-705. Court of condemnation; appeal to Supreme Court; judgment; bonds. Upon the hearing of such appeal in the district court, judgment shall be pronounced, as in ordinary cases, for the value of any such works, plant or system, and from such judgment the city, village, party or corporation owning any such plant, works or system, may appeal to any court of last resort. Upon a final judgment being pronounced as to the value of any such plant, works or system, the duly constituted authorities of any such city or village shall have power and it shall be their duty to issue and sell bonds of any such city or village to pay the amount of such value and judgment without vote of the people."
 
 
 [4]
 For applicable Iowa statutes and legislative history, see §§ 397.20 to 397.25, Iowa Code Annotated